IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JEFFERY JENNINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CV-231-RAH-KFP |
| | ) | [WO] |
| WALTER WOODS, WARDEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.     INTRODUCTION[1]

Plaintiff Jeffery Jennings filed this pro se civil rights action pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), on March 19, 2018.[2] Doc. 1. This matter is before the Court on the Amended Complaint filed against Walter Woods, Warden of the Federal Prison Camp in Montgomery, Alabama ["FPC Montgomery"], Safety Compliance Administrator Tiffany Bailey, HSA Grindle, and Assistant Warden J. Hutchinson.[3] Doc. 16. Jennings alleges Defendants violated his Eighth Amendment rights by subjecting him to unconstitutional conditions of confinement because of a bat infestation in the roof space of his housing unit and by acting with deliberate indifference to respiratory issues he developed as a result of the bats' presence in his living environment. Jennings seeks damages and injunctive relief. *Id*. at 2–5.

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.

[2] Jennings filed this action during his incarceration at the Federal Prison Camp in Montgomery, Alabama. Jennings was released from custody during the pendency of this case. *See* Doc. 36.

[3] *See* Doc. 15 (Order advising Jennings that his "case will proceed only against the defendants named and claims presented in amended complaint").

Defendants filed a special report, a supplemental special report, reply briefs, and supporting evidentiary materials (Docs. 24, 31, 35, 37) arguing this case is due to be dismissed because Jennings failed to properly exhaust an administrative remedy available to him at FPC Montgomery.[4] Specifically, they claim Jennings failed to comply with the Bureau of Prison's ("BOP") internal administrative remedy procedure for its inmates regarding the claims presented. Doc. 24 at 2–4.

Upon receipt of Defendants' special report, as supplemented, the Court issued Orders on July 3, 2018, and August 13, 2018, providing Jennings an opportunity to file a response. Docs. 26, 32. These Orders directed Jennings to address Defendants' argument "that he failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") [prior to filing this federal civil action]." Doc. 26 at 1 (footnote omitted). The Order also advised Jennings his response should be supported by sworn affidavits or other appropriate evidentiary materials. Doc. 26 at 2; *see also* Doc. 32. In its Order entered July 3 the Court cautioned Jennings that unless "sufficient legal cause" is shown within ten (10) days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a dispositive motion and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law Doc. 26 at 3; *see also* Doc. 32.

---

[4] Defendants also argue this action is moot because a contractor was hired to eliminate the bat presence in the housing units at FPC Montgomery. Doc. 35 at 3–4; *see also* Docs. 35-1–35-4. Generally, however, neither resolution of a claim nor a prisoner's transfer to another facility or release from prison moots a claim for monetary damages, *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1362 (11th Cir. 1984), because a claim for monetary damages "looks back in time and is intended to redress a past injury." *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).

2

Jennings took advantage of the opportunity to file a response to Defendants' special report, as supplemented. Docs. 28, 33. In response to Defendants' exhaustion defense, Jennings maintains: (1) his claim falls within the "imminent danger" exception to the PLRA; (2) BOP remedies are futile or inadequate; and (3) the BOP Administrative Remedy Program is not actually available at FPC Montgomery because staff limited the number of grievance forms for distribution to inmates or denied inmate requests for the forms. Doc. 28. In response to Defendants' supplemental special report, Jennings reiterates his contention that exhaustion of the BOP administrative remedy procedure is futile and that it also was unavailable. Doc. 33.

To support their special reports, Defendants produced institutional records and the Declarations of Grzegorz Bitner, Senior Attorney for the BOP at U.S. Penitentiary in Atlanta, Georgia, and Eric Daniels, Jennings' correctional counselor at FPC Montgomery. These evidentiary materials refute Jennings' claims he was impeded in his ability to use or access the BOP's administrative remedy procedure and show that during the relevant time period he had access to the BOP Administrative Remedy Program. Contrary to Jennings' conclusory and unsupported assertions, these documents demonstrate that during all times relevant to the allegations made, he could freely access the grievance process. Docs. 24-1; 31-1—31-4.

"[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008) (internal quotations omitted); *Trias v. Fla. Dept. of Corrs.*, 587 F. App'x 531, 534 (11th Cir. 2014) (stating that the district court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies"). Therefore, the Court will treat Defendants' special report, as supplemented, as a Motion to Dismiss.

## II.    STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e exhaustion, the Eleventh Circuit has

> recognized that [t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court. This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court.

*Leal v. Ga. Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (citations and internal quotations omitted).  Furthermore, "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case" and that cannot be waived. *Myles v. Miami-Dade Cnty. Corr. & Rehab. Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004)).

> When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true.  If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Myles*, 476 F. App'x at 366 (citations and internal quotations omitted). Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535.  Based on the foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id*. at 534.

Upon review of the Amended Complaint and Defendants' dispositive motion with undisputed supporting evidentiary materials, the Court concludes Defendants' Motion to Dismiss is due to be granted.

## III.   DISCUSSION

Jennings challenges the conditions of confinement at FPC Montgomery due to the presence of bats in the ceilings of his housing unit that caused him respiratory problems for which he claims he was denied medical care. In response to these claims, Defendants assert this case may be dismissed because Jennings did not exhaust the administrative remedy provided by the BOP for inmates to seek review of any aspect of their confinement prior to filing a complaint as required by the PLRA. Doc. 24 at 3–4; Doc. 31.

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court in a *Bivens* action. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards. Indeed, as [the Supreme Court] held in *Booth*,

a prisoner must now exhaust administrative remedies even where the relief sought–monetary damages–cannot be granted by the administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016). However, "[a] prisoner need not exhaust remedies if they are not available." *Id*. at 1855 (internal quotation marks omitted). Generally, a remedy is "available" when it has "sufficient power or force to achieve an end, [or is] capable of use for the accomplishment of a purpose[.]" *Booth*, 532 U.S. at 737 (internal quotation marks omitted). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 90–91, 93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. *Id.* at 83-84;

*Bryant*, 530 F3d at 1378 (explaining that to exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step within the administrative process."); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (observing that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that the BOP provides an administrative remedy to resolve inmate complaints regarding any aspect of their confinement. *See* 28 C.F.R. § 542.10, *et seq*. Jennings does not challenge the availability of a grievance procedure at FPC Montgomery during his incarceration at the facility. *See* Docs. 28, 33. Generally, a prisoner must complete a three-step sequential process if the informal resolution procedure—sometimes referred to as a BP-8—fails to resolve the issue. As to the formal administrative remedy procedures, an inmate first must submit a Request for Administrative Remedy on a BP-9 form to the Warden within 20 days of the incident. *See* 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may submit an appeal on a BP-10 form to the Regional Director within 21 days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he may submit an appeal on a BP-11 form to the General Counsel within 30 days of the Regional Director's response. *See id*.; Doc. 24-1 at 1–5.

Mr. Bitner testifies that in his official capacity he has access to official records maintained by the BOP and is familiar with the administrative remedy for inmates contained in the BOP

Program Statement 1330.18 and 28 C.F.R. Part 542, Subpart B. Mr. Bitner states he is also familiar

with the BOP computer system, SENTRY, which contains inmate information, including tracking

information of administrative remedies filed by inmates. In his Declaration Mr. Bitner explains:

> SENTRY can generate a summary of all formal BOP administrative remedy
> requests and/or appeals (i.e., BP-g, BP-10, BP-11) that a federal inmate has
> submitted. This document is known as Administrative Remedy Generalized
> Retrieval. This document has various codes that allow a BOP staff member to
> identify at what level and where an inmate submitted an administrative remedy
> request and/or appeal, what the nature of the administrative remedy request and/or
> appeal is, whether the submission was accepted or rejected, whether the submission
> was granted or denied, and the dates of the submissions and issued responses. I am
> familiar with reading and interpreting these codes. It is also important to note that
> the Administrative Remedy Generalized Retrieval identifies each administrative
> remedy request and/or appeal by their Remedy ID number and that the
> "ABSTRACT" sections of the entries reflect the nature of the administrative
> submission.

Doc. 24-1 at 2–6.

Mr. Bitner attached to his Declaration a copy of Jennings' SENTRY Administrative

Remedy Generalized Retrieval record. The SENTRY record reflects that during Jennings' time in

BOP custody he filed no administrative remedies. Doc. 24-1 at 7. Mr. Daniels testifies that as a

correctional counselor he is responsible for the administrative remedy requests of inmates assigned

as part of his Unit Team at FPC Montgomery. Mr. Daniels reviewed SENTRY records during

Jennings' time in BOP custody and confirms in his testimony that those records show Jennings

submitted no administrative remedies. Docs. 31-1 at 6; 31-2 at 2. Mr. Daniels further testifies:

> Inmates typically begin the administrative remedy process at FPC Montgomery by
> requesting a BP-8 or BP-9 from me or their respective Correctional Counselor.
> Once an inmate requests a BP 8 or 9 from me or their Correctional Counselor, I log
> it into my administrative remedy log book. My log book [] tracks the inmate's
> name, register number, date of issue of the administrative remedy, the date of the
> attempted informal resolution, the response date, the actual administrative remedy
> tracking number and reason for [f]iling.

Plaintiff has never requested a BP-8 or BP-9 from me for the purposes of making claims related to bats or any other issues. I have never denied Plaintiff or any inmate at any time their request for a BP-8 or BP-9 for any issue. If a Correctional Counselor denies an administrative remedy to an inmate, the inmate may ask the Correctional Counselor's supervisor, the Unit Manager, for an administrative remedy. Additionally, an inmate may ask any staff member, including any member of the Executive Staff, including the Warden, at FPC Montgomery, for an administrative remedy. Executive Staff, including the Warden, [are] typically [present during meal service and available to answer inmate questions] and if made aware of the denial of an administrative remedy, could ensure compliance with BOP policy by directing the offending staff member to issue the administrative remedy. Lastly, if all the staff at a BOP institution denied an inmate all access to administrative remedies, the inmate could and should write and file an administrative remedy with their respective BOP Regional Office.

Since December 1, 2017, through August 1, 2018, inmates at FPC Montgomery have filed 62 administrative remedies. None of these 62 administrative remedies concern bats. During this time period, Plaintiff has filed zero administrative remedies. As stated above, I have never denied Plaintiff access to the administrative remedy process at FPC Montgomery. *See* [Doc. 31-3]. Additionally, during this time period inmates at FPC Montgomery have appealed to [the] Central Office through the administrative remedy process 35 times. See [Doc. 31-4].

The Warden, or any other staff member at FPC Montgomery, have never instructed me, either directly or indirectly, to not issue administrative remedies to FPC Montgomery inmates related to the issue of bats or any other issues.

Doc 31-1 at 4–6 (paragraph enumeration and footnote omitted).

The record reflects Jennings did not utilize the BOP administrative remedy process regarding the issues raised in his Amended Complaint. By not properly completing the administrative remedy process, he failed to exhaust his administrative remedies before filing this case. *See Woodford*, 548 U.S. at 90-91. Jennings claims, however, that the process was unavailable because (1) necessary forms for filing grievances are not readily available or staff denies inmate requests for forms; and (2) numerous inmates made a formal grievance to the Warden at FPC Montgomery regarding the presence of bats in the housing unit, and the Warden requested the inmates give him time to resolve the bat infestation issue—including clean-up of the residual

effects from the bats' presence—before "the inmates filed any actions." Doc. 28 at 3–5, 9; Doc. 33 at 3. Because, Jennings claims, he relied on the assertions of the Warden at FPC Montgomery to provide relief regarding their constitutional concerns, the administrative remedy was both unavailable and inadequate. Doc. 28 at 9–10; Doc. 33 at 7. Jennings further contends Defendants' own evidence—which depicts that grievances filed at FPC Montgomery between December 1, 2017, and August 1, 2018, were seldom afforded relief through the administrative remedy process—demonstrates its futility.[5] Doc. 33 at 9–10.

The Supreme Court has delineated three circumstances that may render administrative remedies unavailable:

> (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes...incapable of use...[and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quoting *Ross*, 136 S.Ct. at 1859-60).

The record establishes that the BOP has an Administrative Remedy Program available to inmates and that Jennings had this administrative remedy available to him during his confinement at FPC Montgomery. Jennings' assertions that (1) the administrative remedy process was

---

[55] Jennings' also contends he should be excused from the PLRA's exhaustion requirement due to "imminent danger of serious injury. Doc. 28 at 2–3. The "imminent danger" exception is available to inmates who have previously received three strikes under the PLRA and therefore are no longer permitted to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g). The "imminent danger" exception, however, does not excuse the exhaustion requirement under the PLRA. *See McAlphin v. Toney*, 375 F.3d 753 (8th Cir. 2004) (refusing to recognize "imminent danger" exception to PLRA's exhaustion requirement and holding inmate who was allowed to proceed *in forma pauperis* under imminent danger exception to "three strikes" restriction was still required to meet exhaustion requirement of PLRA); *see also Booth*, 532 U.S. at 741 n.6 (explaining that courts are not to read futility or other exceptions into the § 1997e(a) exhaustion requirement).

unavailable because the Warden at FPC Montgomery indicated he would correct the problem but then failed to act; (2) grievance forms are not readily available or staff deny inmate requests for the forms; and (3) the remedy procedure is futile because relief is seldom granted, are insufficient. Jennings' assertions are vague and conclusory or without any supporting factual detail or context and, thus, fail to demonstrate the administrative remedy procedure was not available to him.

Here, the evidentiary record demonstrates Jennings had an administrative remedy available to him during his confinement at FPC Montgomery, but he failed to exhaust the three-tiered administrative remedy process, set forth at 28 C.F.R. §§ 542.10-.15, with regard to his claims in the Amended Complaint. Specifically, despite the availability of an administrative remedy procedure and his access to that procedure, Jennings filed no administrative remedy regarding the subject matter of this action in accordance with the BOP's Administrative Remedy Program. Jennings has also failed to demonstrate the administrative process was otherwise unavailable to him under the circumstances set forth in *Ross*, 136 S.Ct. at 1859-60. Further, the record shows the administrative remedy is no longer available to Jennings because he is no longer incarcerated. *See* Doc. 36 (Notice of Change of Address)*. Dismissal with prejudice is therefore appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that "[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (footnotes omitted) (holding that inmate's "federal lawsuits [were] properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

## IV.     CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.     Defendants' Motion to Dismiss (Docs. 24, 31) be GRANTED to the extent Defendants seek dismissal of this case due to Plaintiff's failure to properly exhaust an administrative remedy available to him during his confinement at FPC Montgomery prior to initiating this cause of action.

2.     This case be DISMISSED with prejudice under 42 U.S.C. § 1997e(a) for Plaintiff's failure to properly exhaust an administrative remedy previously available to him at FPC Montgomery.

3.     No costs be taxed.

It is further ORDERED that on or before **March 3, 2021**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

      DONE this 17th day of February, 2021.

           /s/ Kelly Fitzgerald Pate
           KELLY FITZGERALD PATE
           UNITED STATES MAGISTRATE JUDGE